# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PHILLIP ALVIN JONES, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-18-2321 |
| STEPHEN T. MOYER, *et al*. | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Philip Alvin Jones brings this civil rights action arising from his confinement in Patuxent Institution in Jessup, Maryland. Defendants Secretary Stephen T. Moyer, Dayena M. Corcoran, Laura Y Armstead, Thomas L. Wolfe, and Dionne Burford[1] moved to dismiss the Complaint or alternatively for Summary Judgment in their favor. ECF No. 30. The Court has reviewed all pleadings and finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018.) For the following reasons, Defendants' motions, construed as Motions for Summary Judgment, are GRANTED.

## I. Background

### A. Procedural History

Jones initiated this action on July 30, 3018 by moving for injunctive relief which the Court construed as a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Jones averred that his housing conditions while confined in administrative segregation at Patuxent were

---

[1] Defendant Damon Fayall, Medical Director, Patuxent and Inmate Health Services, was not served and so he is dismissed from the action without prejudice. Claims against Defendant "Inmate Health Services," are dismissed with prejudice because Inmate Health Services is not a person subject to suit pursuant to 42 U.S.C. § 1983.

1

"inhumane" and deplorable. ECF No. 1. Jones thereafter supplemented his complaint and moved again for emergency injunctive relief. ECF No. 4, p. 3; ECF No. 7. The Court directed Defendants to respond to the motion, which was subsequently mooted by Jones' transfer to another corrections institution. ECF No. 13. Thereafter, Jones moved for leave to amend his Complaint which this Court granted. ECF Nos. 26, 28.

The Court reads Jones' pleadings collectively. In essence, Jones avers that his placement in administrative segregation at Patuxent in July 2018 was constitutionally infirm in that he was deprived recreation, visitation, telephone use, commissary and medical care. ECF Nos. 1, 4, 7. Jones more particularly contends that Defendants designated him as a "plus man," which led to his being treated differently than other similarly situated inmates. *Id*.

**B. Factual Background**

Jones is a Maryland state prisoner currently housed in Washington state pursuant to an Interstate Corrections Compact (ICC) transfer. ECF No. 1 at 1; ECF No. 7 at 1; ECF No. 11-1 at 1, ¶ 2. From June 28, 2016 to October 15, 2016, however, Jones was confined at Patuxent. ECF No. 1 at 1. By affidavit Jones attests for the entire time, he remained in single cell for 23 to 24 hours a day without personal property. ECF No. 27 at 1-2. The cell was empty, had no cold water, no light, and mouse feces all over the bunk and floor. He was not supplied cleaning supplies nor was there an established day for cleaning the cell. *Id*. at 2. Additionally, Jones was not issued any clothing and had only the clothes he wore to Maryland. *Id*. As a result, Jones believes his muscles atrophied and pre-existing condition of hypertension and COPD deteriorated. *Id*. at 3. He claims that his requests went ignored until he was seen by a provider, by Damon Fayall, on an emergency basis. *Id.* Jones also attests to having submitted informal grievances and administrative remedy procedures regarding this time at Patuxent and each were denied or ignored. ECF No. 27 at 3. The grievances were ultimately administratively dismissed

on November 9, 2016 because Jones was returned to Washington State on October 19, 2016. ECF No. 30.

On June 18, 2018, Jones was again transferred to Maryland for a court proceeding that concluded on July 6, 2018. ECF No. 4 at 3. On July 21 or 23, 2018, Jones was moved to Patuxent. ECF No. 4 at 3; ECF No. 7 at 2. Jones avers that for 16 days at Patuxent, he was housed in a "bare naked isolation cell," without any clothing, writing supplies, mail, telephone, visitation, or commissary. ECF No. 4 at 3; see also ECF No. 7 at 1-2. He further asserts that he broke out in unexplained rashes and bumps he believes were caused by dirty surfaces, and he suffered headaches and blurry vision from the heat, humidity and lack of ventilation. *Id*. He claims he could not purchase items form commissary such as a fan, or a cup or bowl for ice water. *Id*. at 2-3. Jones states he was not provided his medication to treat his high blood pressure. *Id*. at 3.

Defendants do not contest that Jones had not been permitted to bring personal items to Patuxent but explain such limitations are for security reasons. ECF No. 11-1 at 1, ¶ 4; ECF No. 30-2 at 1, ¶ 4. Defendants also admit that Jones was placed in administrative segregation because of his heightened security status. However, records reflect that Jones was provided showers and recreation. ECF No. 11-2 at 3-8. He received welfare kits on July 31, 2018, September 20, 2018, and September 28, 2018. ECF No. 30-3 at 2, ¶¶ 4, 5. Jones also received medical care. On July 30, 2018, nurse Miriam Kimetto conducted a behavioral health visit. ECF No. 11-3 at 13. On August 3, 2018, Physician's Assistant, Hettie Wilson, examined Jones for his athlete's foot and psoriatic dermatitis and renewed his medication. ECF No. 11-3 at 29. On September 18, 2018, Jones was seen by nurse Ricky Young and did not report any health issues. ECF No. 11-3 at 3. The same day, Dr. Andrew Moultrie met with Jones in the chronic care clinic to discuss Jones' hypertension and history of pulmonary disease. *Id.* at 4-5. A week later, Jones

3

was given a chest x-ray, which showed no signs of disease. *Id*. at 6.

While incarcerated at Patuxent, Jones filed several administrative remedy procedures (ARPs) concerning the conditions of his confinement. They were each dismissed. ECF No. 30-4, at 2 (ARP PATX-0448-18 complaining that on July 24, 2018, he sent mail to this court which he claims was not received); *id*. at 4 (ARP PATX-0449-18 complaining that the temperature had been over 100 degrees that week and he had no fan or dish for ice, and medical had not delivered his blood pressure medication); *id*. at 6 (ARP PATX-0509-18 complaining of his "Plus Man" status which he alleged deprived him visitation, phone calls, commissary, and stationery); *id*. at 7 (ARP PATX-0534-18 complaining that his sick call slips filed regarding his hypertension and COPD had been ignored); *id*. at 12 (ARP PATX-0588-18 complaining that upon his transfer from MRDCC to Patuxent he was "placed on 23-34 hour solitary confinement, without any notice of status"); *id*. at 4 (ARP PATX-0591-18 complaining that there was no cold water in his cell). Jones also filed one grievance regarding the conditions of his confinement in 2018. This grievance was administratively dismissed on November 19, 2018, after Jones was returned to confinement in Washington State. ECF No. 11-3 at 2; ECF No. 30-4 at 16.

Jones believes that his harsh conditions stemmed from DOC's "non-existent' policy known as 'Plus Man.'" ECF No. 33 at 4. Jones believes that DPSCS case manager Dionne Burford "oversees the ICC 'Plus Man' . . . prisoners . . . and demands the Warden of Patuxent Institution to report directly to her for instructions on how to manage 'Plus Men.'" *Id.* at 5. Jones contends that Burford "forbids the administration of Patuxent Institution to provide or allow "Plus Men" to receive or have anything that the inmates similarly situated are provided by right." *Id.* Jones contends that Burford sent memos directing that "Plus Men" are not allowed phone calls, visitation, commissary purchase for hygiene items, property allowance, clothing, and mail. *Id.* at 4. Jones believes that the "Plus Man" policy is designed to discourage an ICC

4

inmate from filing any court action which would require transfer to Maryland. ECF No. 1-2, at 2. He contends that the policy is designed to "cut out of pocket expenses that are associated with transporting out of State border prisoners back to Maryland." *Id.*

Defendants acknowledge that the term "Plus Man" arises when a transferee is housed temporarily at a DOC facility and must be counted "only for the purpose of carrying him on the institutional count sheets." ECF No. 30-2 at 2, ¶ 8. Accordingly, the designation as "Plus Man" is a colloquial term, not a formal policy, and does not affect treatment of an inmate. *Id.* at 1-2, ¶ 7. Defendants record evidence reflects that ICC inmates are housed in segregation "[f]or safety and security reasons, Mr. Jones is placed on a 'do not disclose' ("DND") status in an effort to maintain the safety of himself and other prisoners." ECF No. 11-1 at 1, ¶ 3; ECF No. 11-2 at 1, ¶ 3.

## II. Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds that no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party's statement "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record over the averred fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries,*

*Inc.*, 637 F.3d 435, 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

The Court previously denied Jones's request for discovery (ECF No. 28) which he has not renewed. Additionally, Jones has submitted evidence for the Court's consideration, ECF No. 33-1, and has argued that summary judgment should be denied because "genuine issues of fact"

preclude resolution. ECF No. 33. The Court will treat this motion as one for summary judgment.

**III. Analysis**

Defendants raise a series of arguments to defeat Jones claims. ECF No. 30. The Court considers each in turn.

**A. Immunity**

Defendants first contend that, pursuant to the Eleventh Amendment to the United States Constitution, they are immune for claims brought against them in their official capacities. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless immunity has been waived or abrogated. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. *Will*, 491 U.S. at 66. Nor has the State of Maryland waived immunity under the Eleventh Amendment to suit in federal court. *Cf.* Md. Code Ann., State Gov't § 12-202(a) (limited waiver of sovereign immunity for certain state actions.). Moreover, the State's Eleventh Amendment immunity protections extend to its agents acting in their official capacities. *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995). Jones does not dispute this bedrock principle or that Defendants

7

are agents of a State entity, the DOC. Accordingly, Defendants cannot be sued for acts undertaken in their official capacities. Judgment on this liability theory is granted in Defendants' favor.

To the extent the Complaint covers Defendants' acts taken in their individual capacities, Jones must generate some evidence that each defendant "acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F. 2d 926, 928 (4th Cir. 1977). Jones cannot proceed under a theory of *respondeat superior* in an attempt to attach supervisory liability for an agent's deprivation of Jones' constitutional rights. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *See Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir. 2001); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

When viewing the record most favorably to Jones, no facts support liability as to Commissioner Dayena M. Corcoran, Warden Laura Armstead,[5] and Thomas Wolfe. Jones proceeds against Moyer and Buford solely on the theory of *respondeat superior*. Moreover, Jones puts forward no evidence of that any of the Defendants had any personal involvement in Jones' confinement on administrative segregation. Accordingly, judgment in Defendants' favor is proper on this basis alone.

### B. Eighth and Fourteenth Amendment claims

Even if Jones's claims survive challenge against any Defendants, he has not generated a genuine issue of disputed fact as to his Due Process or Eighth Amendment claims.

---

[5] Armstead's denial of Jones's ARP requests and appeals does not alone impose liability. *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) citing *Whitington v.Ortiz*, 307 Fed, App'x. 179, 193 (10th Cir.2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.").

Jones principally challenges his placement in administrative segregation as constituting cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, restrictive or even harsh conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Id*. To establish that conditions of confinement amount to an Eighth Amendment violation, a prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious," and that "subjectively the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). More particularly, a prisoner must put forward "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Ultimately, however, prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To demonstrate deliberate indifference, an inmate must show that officials knew about, and disregarded, an excessive risk of harm to his health or safety. *See Wilson*, 501 U.S. at 302–03 (applying the deliberate indifference standard to conditions of confinement claims). *See also Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Even when viewing the evidence most favorably to Jones, he has not demonstrated that his short stay at Patuxent amounted to cruel and unusual punishment. Jones has marshalled no evidence that his confinement physically injured him or created a serious danger to his safety to which Defendants' turned a blind eye. Mere legal conclusions couched as factual allegations will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See* 33-1 (Jones' affidavit generally describing Patuxent as the "worst conditions" and "extreme"). Moreover, to the extent Jones was kept largely in isolation, as difficult as that may be, it does not, as a matter

of law, constitute an Eighth Amendment violation. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)("45 minutes per week of out-of-cell recreation time" insufficient where the inmate "did not suffer any injury or decline in health resulting from his limited out-of-cell exercise time."); *See also Harris v. Barone*, 2014 WL 2694005 at * 6 (W.D. Pa. June 13, 2014)(lengthy denial of recreation time insufficient). Jones also received constitutionally adequate medical care[6] as well as necessary medications.

Nor does Jones provide any evidence that any of the named Defendants had a sufficiently culpable state of mind such that they acted to endanger Jones' safety or well-being. The record reflects that Jones was provided recreation, showers, welfare hygiene materials, access to administrative grievances, and medical care. Even viewing the facts most favorably to Jones, insufficient evidence exists to support his claim that his segregation conditions violated his Eighth Amendment rights. On this record, therefore, Jones could not sustain an Eighth Amendment claim.

To the extent Jones challenges the same confinement conditions on Due Process grounds, his claim likewise fails. Where state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the prisoner's liberty interest may be implicated. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison

---

[6] The record evidence viewed most favorably to Jones does not support an Eighth Amendment violation based on denied or delayed medical treatment. To state an Eighth Amendment claim for constitutional denial of medical care, a plaintiff must demonstrate that defendant's acts or omissions amounted to deliberate indifference as to plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999). The record evidence reflects that Jones received adequate care.

population and have been transferred to security detention while serving their sentence." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015). Where conditions in segregated confinement are "similar in most respects to those experienced by inmates in the general population," no liberty interest exists in avoiding that segregation assignment. *Beverati v. Smith*, 120 F.3d 500, 503-04 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996). Simply put, it is not "atypical" for inmates to be placed on administrative segregation for any number of reasons. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life).

Notably, in *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit concluded that six months' in segregation did not amount to an *atypical* burden compared with ordinary prison life. Inmates attested by affidavits that while in segregation, "their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above;" that they were "forced to use their clothing and shampoo to clean the cells" and did not "receive clean clothing, linen, or bedding." The Court nonetheless held that such conditions "do not as a matter of law "implicate a liberty interest," sufficient to sustain a due process claim. *Id.* at 504.

Here, Jones confinement conditions, as he has describes them, are not as onerous as those in *Beverati*. The record evidence further demonstrates that while in administrative segregation, Jones was provided showers, recreation, access to medical and mental health care, mail, access to the grievance process, and welfare hygiene materials. And Jones' placement in administrative segregation was limited in duration. *See Beverati*, 120 F.3d at; *see also Davis v. Warden*, 08-AW-2553, 2010 WL 234970, at *2 (D. Md. Jan .14, 2010) (rejecting due process challenge to administrative segregation at Northern Branch Correctional Institution); *Knox v. Lanham*, 895

F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at ECI). Accordingly, even viewing the terms of his segregation most favorably to Jones, his Due Process claim must fail.

### IV. Conclusion

Defendants' Motion for Summary Judgment is granted as to all claims. A separate Order follows.

|  |  |
|---|---|
| 3/9/20 | /S/ |
| Date | Paula Xinis<br>United States District Judge |